# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LAWRENCE KENNETH ALLEN, II | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RWT-10-1028 |
| MAJD ARNAOUT, et al. | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Pending is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 15. Plaintiff opposes the motion. ECF No. 18. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted.

## Background

Plaintiff claims that Dr. Arnaout took him off every medication he was taking for treatment of his multiple sclerosis (MS), putting his health in grave danger. ECF No. 1. He states he has had three MRIs and has been treated by three neurologists for "over half a decade" for MS. *Id.* He claims that since he was taken off his MS medications his symptoms have returned, but the medical staff has failed to correct the error that resulted in the discontinuation of his medications. *Id.* at 3.

Defendants state that Plaintiff's medical conditions include MS,[1] constipation, and nonspecific joint pain, possibly due to osteoarthritis. ECF No. 15 at Ex. A. Plaintiff's MS is

---

[1] Defendants explain that MS is a disease that causes destruction of the myelin layer surrounding the nerves of the central nervous system. Plaques developing on the brain and spinal cord disrupt the transmission of information in

treated with daily Copaxone injections which "prevent harmful MS cells from developing and stimulates production of beneficial cells that slow the progression of the disease." *Id.* at 2. Defendants claim Plaintiff's prescription for Copaxone remains in effect, although he occasionally misses doses through no fault of the medical staff.[2] Dr. Arnaout states that Plaintiff has filed approximately 30 sick call forms claiming he is not treating Plaintiff properly and that his Copaxone injections have been discontinued. *Id.* at 4. Arnaout states the allegations are false as Copaxone has never been discontinued nor is there any plan to discontinue the medication in the future. *Id.*

In addition to Copaxone, Plaintiff has also been prescribed Lyrica and Neurontin for neuropathic pain, plus other pain medications, including Motrin, Ultram, Tylenol, and Excedrin Migraine. ECF No. 15 at Ex. A, p. 4. One of the medications recently discontinued was Ultram, a narcotic strength medication used to treat moderate to severe pain. Ultram can be habit-forming, and is not prescribed for osteoarthritis pain. *Id.* Arnaout states that Plaintiff reported having pain in his hip and the proper treatment protocol for such pain, in increasing order of necessity, is Tylenol, non-steroidal anti-inflammatory medications (NSAIDs), steroid injections, and finally joint replacement surgery. *Id.* Ultram is not indicated for the type of pain reported by Plaintiff.

On April 6, 2010, Plaintiff was evaluated by Arnaout for his complaint of constipation. *Id.* at 5. At the time Plaintiff was taking 400 mg of Ultram each day, which exceeds the

---

the central nervous system leading to loss of neurological function. The disease is progressive. ECF No. 15 at Ex. A.

[2] Defendants state Plaintiff missed his Copaxone injections seven times in April 2010. ECF No. 15 at Ex. A, p. 2 and Ex. B.

recommended dosage of no more than 300 mg per day. *Id.* A side effect of Ultram, as well as several other medications Plaintiff was taking, is constipation.[3] *Id.* Plaintiff was also taking several medications to treat the constipation. Arnaout explains that Plaintiff's report of constipation, together with his concerns regarding drug interactions, side effects, and the habit-forming qualities of Ultram, led him to decide to decrease Plaintiff's Ultram dosage to 100 mg per day. *Id.*, *see also* Ex. B, pp. 12-14, 105.

On April 17, 2010, Plaintiff began asking for Nubain or Toradol injections for pain because Arnaout would not increase his dosage of Ultram. *Id.* at 5. Plaintiff's request was denied because Nubain, a narcotic, is inappropriate for the type of pain Plaintiff described, and Toradol, an NSAID, has too many serious side effects. *Id.*, Ex. B, p. 27.

On April 19, 2010, Plaintiff was again seen for a complaint of constipation. At the time he was receiving approximately 35 different types of medication; therefore, Arnaout consulted with the pharmacist to get a recommendation regarding dosage adjustments and discontinuations. ECF No. 15 at Ex. A, p. 5. When Arnaout attempted to discuss the matter with Plaintiff, Plaintiff became irate, threatened to hit him, and left the clinic without being examined. *Id.* Based on the pharmacist's recommendations, Arnaout discontinued Plaintiff's Excedrin Migraine because it contains Tylenol, Plaintiff was already receiving Tylenol, and Tylenol overdose can lead to liver damage. *Id.* In addition, Plaintiff's Ultram was discontinued, prompting him to file approximately 25 sick call forms complaining of pain and demanding Ultram. *Id.* at 5-6.

On May 13, 2010, Arnaout attempted to evaluate Plaintiff's complaint of pain, but Plaintiff would not cooperate enough to allow a complete neurological assessment. *Id.* at 6.

---

[3] Constipation is also a symptom of MS. *See* http://ms.about.com/od/signssymptoms/a/constipation.htm; *see also* ECF No. 18 at p. 3.

3

Arnaout did not detect any weakness in Plaintiff's legs and, based on what he could observe, discontinued Plaintiff's prescriptions for Lyrica and Neurontin, which are used to treat nerve pain. *Id.* Arnaout determined that the pain described by Plaintiff was not attributable to neuropathy; rather, it was due to osteoarthritis. *Id.* Additionally, Plaintiff told Arnaout that Lyrica and Neurontin were not helping to alleviate his pain. *Id.* To treat Plaintiff's osteoarthritis pain, Arnaout increased his Tylenol dosage. *Id.*

Arnaout reviewed Plaintiff's entire medical chart on May 14, 2010, and discovered that Plaintiff's last MRI study was dated July 18, 2005. *Id.* In addition, a report from a doctor at Johns Hopkins dated October 23, 2007 indicated that Plaintiff's MS could not be confirmed or refuted. *Id.* at 6-7; Ex. B, p. 58. Although Plaintiff will not permit Arnaout to conduct a complete neurological examination, Arnaout infers that Plaintiff's neurological function has not changed since he was first diagnosed with MS. *Id.* at 7. Arnaout submitted a request for a repeat MRI and re-evaluation at Johns Hopkins, but his request was denied by the utilization review contractor. *Id.* The request will be reconsidered if Plaintiff's symptoms change. *Id.*; Ex. B, pp. 59-61, 69, 71, 74, and 86-87.

On June 8, 2010, Arnaout spoke with Plaintiff regarding pain medication, but when he told Plaintiff he would not give him Ultram, Plaintiff left the clinic. ECF No. 15 at Ex. A at p. 7. Arnaout told Plaintiff the type of pain he has is not treated with Ultram, but Plaintiff insists it is the only medication that works for him. *Id.* Arnaout denies ever using racial slurs in reference to Plaintiff. *Id.*

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173

(1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical condition and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837-40 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995). If the requisite subjective knowledge is established, an official may avoid liability "if [he]

responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

In his opposition to the Motion for Summary Judgment, Plaintiff states that Arnaout's decisions and actions regarding his medications are motivated purely by his personal dislike for Plaintiff because Plaintiff is African-American.[4] ECF No. 18. Plaintiff disputes the medical basis for the treatment decisions made by Arnaout, but simple disagreement with medical decisions does not establish that Arnaout was deliberately indifferent to Plaintiff's medical needs. *See Farmer*, 511 U.S. at 839-40. Plaintiff seems to suggest that his constipation is untreatable and he should not be removed from medications simply because they exacerbate his constipation. A review of the numerous medications being taken by Plaintiff revealed several potentially dangerous duplications (Tylenol) and several potential causes for Plaintiff's constipation. ECF No. 15 at Ex. A. The danger of drug interactions was real and the fact that Arnaout took precautionary measures to eliminate potentially dangerous interactions is not evidence of deliberate indifference, but rather indicates a concern for Plaintiff's health. Plaintiff has put forth no evidence that Arnaout was motivated by racial animus, rather than medical judgment, in altering Plaintiff's drug regimen. Though it is true that the prison medical staff must evaluate and treat Plaintiff for his chronic pain symptoms to avoid incurring constitutional liability, there is no evidence before the Court at this time to suggest that the medical staff has been deliberately indifferent to Plaintiff's medical needs.

---

[4] Plaintiff fails to elaborate on his claims against Skidmore, Bray and Dudley, entitling them to dismissal from this case.

Accordingly, Defendants are entitled to summary judgment. An Order shall be entered in accordance herewith.

Date: <u>December 13, 2010</u>                             <u>          /s/                    </u>
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE